No. 83-555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

LAWRENCE P. O'SHAUGHNESSY,

Plaintiff and Appellant,

-vs-

ROBERTA WOLFE, Flathead County Treasurer,
JOAN DEIST, MELFORD WOLLAN and HENRY
OLDENBURG, Flathead County Commissioners
and DEPARTMENT OF REVENUE,

Defendants and Respondents.

APPEAL FROM:  The District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Neil Halprin, Missoula, Montana

For Respondents:

Ted O. Lympus, County Attorney, (Jonathon B. Smith,
Deputy), Kalispell, Montana
Larry G. Schuster, Dept. of Revenue, Helena, Montana

Submitted on Briefs:  April 26, 1984

Decided:  August 15, 1984

Filed:  AUG 15 1984

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

We determine in this cause that the state legislature intended a retroactive effect to be given to its 1981 statutory amendment increasing the rate of interest on delinquent tax payments. We also determine that such retroactive effect offends no state or federal constitutional provision.

Lawrence P. O'Shaughnessey, in 1982, tendered to the county treasurer of Flathead County an amount he calculated would cover interest, penalty and property tax payments delinquent since 1978. The county treasurer refused the tender because the amount tendered was insufficient if the rate of interest applied to the delinquent taxes was calculated at the rate of 10% per annum. O'Shaughnessey maintained that the interest rate should be 8% up to November 30, 1981 and 10% thereafter. When the county treasurer would not accept an amount so calculated by O'Shaughnessey, he filed a suit in the District Court, Eleventh Judicical District, Flathead County, for a judgment in effect compelling the county treasurer to accept his tender.

On January 19, 1983, the District Court ordered that O'Shaughnessey's suit be dismissed. The District Court grounded its dismissal on (1) the intent of the state legislature in 1981 to apply a uniform rate of interest to all property taxes due prior to November 30, 1981, but unpaid on that date; (2) an intent to apply the rate through the entire period of delinquency and (3) on finding no constitutional prohibition against retroactivity. O'Shaughnessey appeals from the order of dismissal.

Prior to 1981, the rate of interest applied to tax payments in delinquency was 2/3 of 1% per month (8% per annum) from and after the delinquency until paid. Section 15-16-101, MCA. In 1981, the state legislature twice amended sections 15-16-101, 15-16-102, 15-17-303, MCA. (Ch. 576, Laws of Montana (1981) (regular session); Ch. 6, Laws of Montana (1981) (special session).) Each such amendment had the effect of increasing the rate of tax from 2/3 of 1% per month to 5/6 of 1% per month (10% per annum). The first amendment, providing that the act applied to taxes assessed and levied after December 31, 1980, was approved May 1, 1981. The second amendment, Chapter 6, supra, had this provision respecting applicability:

> "Section 4. <u>Effective date and applicability</u>. This Act is effective on passage and approval and applies to real and personal property taxes that become due on or after November 30, 1981, or that became due prior to November 30, 1981 and remain unpaid on or after November 30, 1981."

The second amendment was approved by the Governor on November 25, 1981.

The first issue is whether the increased rate of interest on delinquent tax payments provided in Ch. 6, Laws of Montana (1981) (special session), should be given retroactive effect. We hold it was the clear intent of the legislature that such retroactive effect be given to the amendment.

Section 1-2-109, MCA, provides that no law contained in any of the statutes of Montana is retroactive unless expressly so declared. This Court has held, however, that the legislature, in providing a retroactive effect to its enactments, need not expressly state "this act is retroactive." Any language that shows a legislative purpose

to bring about that result is sufficient. If it is unmistakable that an act was intended to operate retrospectively, that intention is controlling in the interpretation of the statute, even though it is not therein expressly so stated. Davidson v. Love (1953), 127 Mont. 366, 370, 264 P.2d 705, 707; State, by and through the State Highway Commission v. Marsh (1978), 175 Mont. 460, 469, 575 P.2d 38, 44.

The intent of the legislature that Chapter 6, supra, be given retroactive effect as to the increased rate of interest is clear and unmistakable. It specifically applies to taxes that became due before November 30, 1981, but remained unpaid on or after that date.

We have recognized the intent of the legislature to apply laws retroactively in Mills v. State Board of Equalization (1934), 97 Mont. 13, 33 P.2d 563 (retroactive income taxes); State ex rel. Rankin v. District Court (1924), 70 Mont. 322, 225 P. 804 (retroactive inheritance taxes).

The second issue raised by O'Shaughnessey is that retrospective application of the November 1981 amendment increasing the rate of interest on delinquent taxes violates the Due Process Clause (Article II, Section 17) and the Equal Protection Clause (Article II, Section 4) of the 1972 Montana Constitution, and on the Fourteenth Amendment of the Federal Constitution.

O'Shaughnessey bases his second issue upon the unfortunate but unintentional fact that the attorney general issued two opinions as to whether the November 1981 amendment should be given retroactive application, the first opinion saying no and the second opinion saying yes. The attorney general issued the first opinion on August 19, 1982 (Vol. 39,

Opinions of Montana Attorney General, No. 70) but withdrew the August opinion and issued a second but opposite opinion on October 26, 1982 (Vol. 39, No. 76, supra).

O'Shaughnessey contends that the two attorney general's opinions divided taxpayers into two separate classes, those who paid interest on their tax delinquencies due on November 30, 1981 as directed by the August 19, 1982 attorney general's opinion, and those that paid at the new rate directed by the October 26, 1982 opinion, such as O'Shaughnessey. In his opposing argument, O'Shaughnessey marshalled evidence before the District Court that certain taxpayers had indeed made delinquent tax payments on which interest was charged on the basis of the first attorney general's opinion.

An attorney general's opinion which conflicts with the legal opinion of the city attorney, county attorney, or state-employed attorney is controlling unless overruled by a District Court or the Supreme Court. Section 2-15-501(7), MCA. An attorney general's opinion is not binding on the Supreme Court, Butte Miner's Union No. 1 v. Anaconda Mining Company (1941), 112 Mont. 418, 118 P.2d 148. The county treasurer of Flathead County, between August 18 and October 26, 1982 was bound by the first opinion of the attorney general not to apply retroactively the November 1981 amendment increasing the rate of interest on tax delinquencies. After October 26, 1982, the county treasurer was bound by the second attorney general's opinion to apply the increase retroactively. This does not in itself mean that the November 1981 amendment is violative of due process or equal protection clauses of the state or federal constitutions. The legislative enactment stands by itself.

It applies without discrimination to all persons in the same class equally. The act of an administrator or executive official interpreting the amendment will not make the statute itself unconstitutional, especially where the interpretation is clearly mistaken based on the language of the enactment. It is true that courts sometimes look to official usage or interpretation to determine the constitutional effect of doubtful language in statutes. Courts never look to administrative interpretation when the language is clear beyond cavil. To hold otherwise would be to say that administrators and executive officials, interpreting the effect of statutes, could undermine the enactments by official action and nullify otherwise validly adopted laws. Thus, the legislative, and even the judicial power would pass to the executive, at least in the negative or vetoing sense.

We have here a legislative amendment clearly pointing to a retroactive result. Its language is not discriminatory but applies to all delinquent tax payments made on or after November 30, 1981. All persons will be charged the same rate of increased interest on their delinquencies. The legislature created no favored class. If some taxpayers of Flathead County escaped the increased rate of interest on some portion of their delinquencies by paying up between August 19 and October 26, 1982, the legislature is not at fault, nor the language of the November 1981 amendment. It clearly applies to all equally.

It is possible that taxpayers who were delinquent but paid up before the legislative amendment of 1981 were charged 8% instead of 10% per annum on their delinquency, though perhaps the same 1978 taxable year for which O'Shaughnessey was delinquent was involved. This possiblity does not create

- 6 -

an unconstitutional discrimination. O'Shaughnessey did not have a vested right in the interest rate charged on delinquent taxes that is immune from legislative amendment. We agree with the Supreme Court of Michigan:

> "It is the duty of the landowner to pay his taxes, and to pay them when they become due. Incidental to the power to tax is the power to enforce payment. Because the state has been liberal in making provision for the redemption of the lands from the lien created by the tax, it does not follow it cannot change the terms upon which the lands can be redeemed. (Citation.) We do not think it can be longer said in this state that the taxpayer has a vested right to have the interest charged in order to redeem to remain at the same rate it was when the land was assessed, so long as he chooses to be delinquent in the payment of his taxes." Webster v. Auditor General (Mich. 1889), 80 N.W. 705, 707.

O'Shaughnessey's third issue on appeal is that retrospective application of the November 1981 amendment constitutes an ex post facto penalty in violation of the state and federal constitutions.

O'Shaughnessey recognizes that the increased rate of interest on delinquent taxes is not a criminal penalty, but contends that the increase is punitive in nature and amounts to the taking of the vested right.

We have already said that a delinquent taxpayer has no vested right in the amount of interest that will be charged when he finally pays his delinquent taxes. However the rule against ex post facto laws applies only to penal or criminal matters. The collection of delinquent taxes by the assessment of interest and penalties on the amounts due does not change a civil proceeding to a penal or criminal matter. The ex post facto rule does not apply in this case. Durocher v. Myers (1929), 84 Mont. 225, 230, 231, 274 P. 1062, 1065; McClanathan v. Smith (1980), 186 Mont. 56, 606 P.2d 507.

We affirm the judgment of dismissal in the District Court.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

- 8 -